**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

GREGORY M.

        **Plaintiff,**

  v.                           **Civil Action 2:25-cv-01028**
                                     **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

**OPINION AND ORDER**

Plaintiff Gregory M. brings this action under 42 U.S.C. § 405(g) seeking review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

Disability Insurance Benefits ("DIB").  For the reasons set forth below, the Court **OVERRULES**

Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

**I.      BACKGROUND**

Plaintiff protectively filed his application for DIB on January 20, 2023, alleging he has

been disabled since April 20, 2022, due to diabetes, high cholesterol, afib (atrial fibrillation), sleep

apnea, tachycardia, obesity, anxiety, dizziness, migraines, shortness of breath, hearing loss, and

weight loss.  (R. at 197–202, 223).  After his application was denied initially and on

reconsideration, the Administrative Law Judge (the "ALJ") heard the matter on September 19,

2024.  (R. at 59–75).  Ultimately, the ALJ denied benefits in a written decision on October 15,

2024.  (R. at 33–50).  The Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 10, 2025, (Doc. 1), and the Commissioner filed the administrative record on December 2, 2025, (Doc. 8).  The matter has been briefed and is ripe for consideration.  (Docs. 9, 10, 11).

**A.      The ALJ's Discussion of Plaintiff's Non-Severe Mental Impairment and Decision**

The ALJ found that Plaintiff meets the insured status requirements through June 30, 2027, and has not engaged in substantial gainful activity since April 20, 2022, the alleged onset date of disability.  (R. at 38).  The ALJ determined that Plaintiff suffered from the severe impairments of obesity, diabetes mellitus II, sleep apnea, atrial fibrillation, and hypertension.  (*Id.*).  Relevant here and discussed in more detail below, the ALJ walked through Plaintiff's medical records and opinions as to his anxiety.  (R. at 39–40).  The ALJ still found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment.  (R. at 40).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally crawl; and avoid all exposure to the hazards of moving machinery and unprotected heights.

(R. at 41).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 42).

Relying on the testimony from a Vocational Expert ("VE"), the ALJ found that Plaintiff is capable of performing his past relevant work as a home attendant.  (R. at 45).  Further relying on the VE's testimony and considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a

2

merchandise marker, routing clerk, and cafeteria attendant.  (R. at 45–46).  The ALJ noted that Plaintiff turned 55 years old in 2023, and at that age, could be disabled under grid rule 202.06 if unable to perform past work and lacked transferable skills.  Since the VE testified Plaintiff can perform his past relevant work as actually performed, the ALJ determined that Plaintiff is not disabled under the grid rule.  Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 20, 2022.  (R. at 46).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court."  *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III.     DISCUSSION**

Plaintiff raises a single assignment of error:  The ALJ failed to account for mild limitations in Plaintiff's ability to concentrate, persist, or maintain pace and adapt in the RFC determination. (Doc. 9 at 4–6).  The Commissioner counters that the ALJ reasonably found that Plaintiff's non-severe impairment of anxiety did not result in any additional workplace functional limitations in those areas.  (Doc. 10 at 3–9).  The Court agrees with the Commissioner's read.

**A.     Step Two**

An ALJ must make several determinations at step two of the sequential evaluation.  To begin, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1520; 404.1521.  A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Additionally, it must meet the durational requirement.  20 C.F.R. § 404.1509.  "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC."  *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)).  "Plaintiff has the burden of proving the existence of a medically determinable impairment."  *Id.* (quoting *Moore*, 2021 WL 5149714, at *7).

If an impairment is medically determinable, then an ALJ must determine whether it is severe.  *Id.*  A "severe impairment" is defined as "any impairment or combination of impairments

4

which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments.  *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007).  Plaintiff's assigned error does not truly attack the ALJ's step two analysis but rather what comes next.  (*See generally* Doc. 9).

Under the regulations, an ALJ must still consider "all of a claimant's impairments in the remaining steps of the disability determination."  *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe."); *see also* 20 C.F.R. § 416.945(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").  In the end, "if an ALJ errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity." *Meadows*, 2008 WL 4911243, at *13 (citation omitted).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  When determining the

5

RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Finally, as it relates to a plaintiff's non-severe impairments, the regulations "require the ALJ to 'consider' the possible effect of a non-severe impairment on the [plaintiff's] capacity for work . . . [but] there is no accompanying requirement that the RFC must then include restrictions reflecting a non-severe condition in the RFC." *Todd J. v. Comm'r of Soc. Sec.*, No. 3:22-CV-324, 2023 WL 6533824, at *6 (S.D. Ohio Oct. 6, 2023), *report and recommendation adopted sub nom. Jacobs v. O'Malley*, No. 3:22-CV-00324, 2024 WL 770903 (S.D. Ohio Feb. 26, 2024).

### B.     The ALJ's Step Two Analysis

At step two, the ALJ considered Plaintiff's allegation of anxiety. (R. at 39). She found that Plaintiff's physician treated his anxiety with medication but also that his exam findings were normal. (*Id.* (citing *e.g.*, R. at 327–28, 344, 366, 415–16)). The ALJ considered that consultative psychologist James J. Rosenthal, Psy.D. found that Plaintiff had a normal psychiatric exam and did not give Plaintiff a psychiatric diagnosis. (*Id.* (citing R. at 397–402)). The ALJ also noted

6

there were no complications in the record related to Plaintiff's anxiety. (*Id.*). Relying on this assessment, the ALJ found Plaintiff's anxiety to be a non-severe impairment. Still, the ALJ's analysis did not stop there.

The ALJ further considered that state agency psychologists Barry Rudnick, M.D. and Robyn Murry-Hoffman, Psy.D.[1] opined Plaintiff has no severe mental impairment. (*Id.* (citing R. at 82, 91)). The ALJ found those opinions persuasive, "as supported by their references to normal mental exams." (*Id.* (citing R. at 82–83, 92)). The ALJ also found the opinions consistent with the normal mental exams of record and Plaintiff's conservative treatment history. (*Id.* (citing, *e.g.*, R. at 305, 415, 429)). She further noted that the opinions matched each other. (*Id.*).

The ALJ then went into more detail about Dr. Rosenthal's consultative examination. She highlighted that Dr. Rosenthal opined that Plaintiff can understand and complete a one-step work assignment but provided no other limitations. (*Id.* (citing R. at 401)). The ALJ found that opinion not persuasive because it was not supported by his exam findings. (*Id.*). Particularly, the exam found there was no evidence Plaintiff had thought disturbance or confusion. (*Id.* at 399–401). And Plaintiff had normal sensorium, cognitive functioning, and memory. (*Id.* (citing R. at 400)). The ALJ further found Dr. Rosenthal's conclusion did not align with Plaintiff's "conservative treatment with Wellbutrin nor with the state agency opinions." (*Id.* (citing, *e.g.*, R. at 82, 430)). All told, the ALJ concluded that Plaintiff's "medically determinable mental impairment of anxiety does not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore non-severe." (*Id.*).

---

[1] The ALJ's opinion contains a typographical error. The ALJ mistakenly identifies Dr. Murry-Hoffman as Dr. Rosenthal. (R. at 39). Based on her citations to the record, it is clear that the ALJ is speaking of Dr. Murry-Hoffman's evaluation here. (*Id.* (citing to Dr. Murry-Hoffman's opinion at exhibit 4A)). Accordingly, this error is of no consequence.

The ALJ continued that in making her findings, she considered the broad functional areas of mental functioning—known as the "paragraph B" criteria—set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. (*Id.* (citation omitted)).

Under the first criteria, the ALJ found that Plaintiff has no limitation in understanding, remembering, or applying information. (*Id.*). She noted that no treating source indicated any memory or cognitive functioning impairment. (*Id.* (citation omitted)). Dr. Rosenthal found Plaintiff can follow and understand directions and had no thought disturbances or confusion. (*Id.* (citing R. at 400–01)). The ALJ also highlighted that Plaintiff reported he does not need reminders to take medication or for personal grooming, and he can handle his finances. (*Id.* (citing R. at 247–49)).

Second, the ALJ also found that Plaintiff has no limitation in interacting with others. (R. at 40). In particular, Dr. Rosenthal noted that Plaintiff showed good eye contact and was pleasant and friendly during the consultative interview. (*Id.* (citing R. at 399)). Further, the ALJ pointed out that Plaintiff runs errands, attends doctor appointments, sees friends three or four times per week, and talks to his family on a daily basis. (*Id.* (citing R. at 400)).

Third, the ALJ found that Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace. (*Id.*). However, she also found that neither the treating sources nor the consultative psychologist indicated any impairment in that area of social functioning. (*Id.* (citing, *e.g.*, R. at 401 ("The claimant was alert and on task during the exam. He reported no prior incidents of concentration or attention problems on past jobs. The claimant stated that he attends doctor appointments as scheduled and takes medication as prescribed."))). And Plaintiff provided that he reads and watches television "with no reported problems with concentration." (*Id*. (citing R. at 247)).

In the last functional area, adapting or managing oneself, the ALJ also found a mild limitation. (*Id.*). At the same time, the ALJ again highlighted that the treating sources noted normal psychiatric findings on examinations. (*Id.* (citing, *e.g.*, R. at 305, 415, 429)). The ALJ further stated that the consultative psychologist reported normal findings, euthymic affect, and good insight and judgment. (*Id.* (citing R. at 399–400)). Additionally, Plaintiff did not appear overly anxious, scared, restless, or panicky. (*Id.* (citing R. at 399)). The ALJ continued that Plaintiff reported that he and his children do laundry, cook, and clean, and Plaintiff watches television, reads, raises chickens and pigs, plays guitar, and runs errands. (*Id.* (citing R. at 400)).

The ALJ ultimately concluded that because Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe" in accordance with 20 C.F.R.§ 404.1520a(d)(1). (R. at 40). The ALJ went on to say that the subsequent residual functional capacity assessment "reflects the degree of limitation [she found] in the 'paragraph B' mental function analysis." (*Id.*).

### C.     The ALJ's Compliance with the Law

Plaintiff's Statement of Errors asserts that the ALJ erred in finding Plaintiff could return to past skilled work "without considering the effect of his mild mental impairments on his ability to perform such work." (Doc. 9 at 4). In other words, Plaintiff contends that because the ALJ found he has a mild impairment in two of the "paragraph B" criteria, she was required to engage in more analysis than she did in considering whether Plaintiff's nonsevere anxiety effects his ability to work. (*See id.* at 7–10). Plaintiff points out that the ALJ provided no explanation after step two for omitting mental limitations from the RFC. (*Id.* at 8). Ultimately, though, Plaintiff asks the Court to place a higher burden on the ALJ than the law requires.

As stated, the ALJ found Plaintiff's anxiety to be non-severe.  (R. at 39).  Contrary to Plaintiff's assertions, this Court has emphasized that "Sixth Circuit case law rejects the premise that an ALJ must expressly articulate at Step 4 why he has assessed no limitations for an impairment found to be nonsevere at Step 2." *Rachael G. v. Comm'r of Soc. Sec.*, No. 3:23-CV-115, 2024 WL 2847182, at *6 (S.D. Ohio June 5, 2024).  More specifically, in *Emard v. Commissioner of Social Security*, the Sixth Circuit considered the extent to which an ALJ should consider non-severe impairments in assessing a claimant's RFC.  953 F.3d 844, 851–52 (6th Cir. 2020).  The panel explained,

> Although the ALJ did not specifically discuss . . . Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and "all symptoms" at this step in the process. This court in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir. 1987), concluded that an ALJ's statement that he had conducted "a thorough review of the medical evidence of record," along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination. *Id.* at 591–92. ***

> Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe." District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. . . . The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.

*Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *5 (SSA July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'  While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").  Accordingly, the Court looks for three pieces when determining whether an ALJ

10

properly considered all of a claimant's impairments—severe and non-severe—in fashioning an RFC:  "(1) an express reference to SSR 96-8p; (2) a discussion of the functional limitations imposed by [the plaintiff's] nonsevere impairments at step two of [the] analysis; and (3) a subsequent assurance that [the ALJ] had considered the entire record and all symptoms."  *John S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4207, 2023 WL 6141664, at *4 (S.D. Ohio Sept. 20, 2023) (citations and internal quotation marks omitted).

The ALJ's decision contains the first of these pieces—an express reference to SSR 96-8p. In her summary of applicable law, the ALJ notes that in determining a claimant's RFC, she "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)."  (R. at 37–38); *see, e.g.*, *Heather M. v. Comm'r of Soc. Sec. Admin.*, No. 2:24-CV-1108, 2025 WL 313936, at *3 (S.D. Ohio Jan. 28, 2025) (finding a substantially similar statement in the summary of applicable law satisfies the first factor), *report and recommendation adopted sub nom. Heather M. v. Comm'r of Soc. Sec.*, No. 2:24-CV-1108, 2025 WL 520855 (S.D. Ohio Feb. 18, 2025).  The ALJ's decision also contains the third piece—an assurance that she considered the entire record and all symptoms.  Specifically at step four of the analysis, she stated that the RFC was found following "careful consideration of the entire record."  (R. at 41).  The ALJ further said she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (*Id.*).  Again, courts have found these statements adequate.  *See, e.g.*, *John S*, 2023 WL 6141664, at *5 (finding the ALJ's statements that her "decision stemmed from 'careful consideration of the record' and that she 'considered all symptoms'" sufficient); *Stephen M. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00026, 2023 WL 2642943, at *6 (S.D. Ohio Mar. 27, 2023) (same).

The Court also finds that the ALJ appropriately addressed the second piece—a discussion of the functional limitations imposed by Plaintiff's nonsevere impairments at step two of the analysis.  As outlined above, in finding Plaintiff's anxiety nonsevere, the ALJ considered Plaintiff's treating physicians' clinical notes, the state agency reviewers' opinions, and Dr. Rosenthal's consultative examination findings. (R. at 39).  The ALJ catalogued Plaintiff's normal psychiatric examination results. (*Id.*).  The ALJ highlighted that neither the state agency reviewers nor Dr. Rosenthal opined that Plaintiff had a severe mental impairment or a psychiatric diagnosis. (*Id.*).  The ALJ also explained why Dr. Rosenthal's opined limitation that Plaintiff could understand and complete a one-step work assignment was not supported or consistent with the record. (*Id.*).

The ALJ went into further detail regarding Plaintiff's functional limitations in discussing the "paragraph B" criteria.  The ALJ considered the record and found no limitation related to Plaintiff's understanding, remembering, or applying information. (*Id.*).  The same is true of Plaintiff's ability to interact with others. (R. at 40).  In discussing those two criteria, the ALJ discussed the consultative examination results and highlighted Plaintiff's reported activities. (*Id.* at 39–40).  Concerning concentrating, persisting, or maintaining pace and adapting or managing oneself, it is true that the ALJ found Plaintiff had mild limitations in line with the state agency reviewers' opinions. (R. at 40; *see* R. at 82, 92).  Still, for the first, the ALJ highlighted that no source indicated "any impairment in this area of functioning" and noted Plaintiff engaged in daily activities with no reported problems in concentration. (*Id.*).  And for the second, the ALJ discussed Plaintiff's normal psychiatric findings, normal consultative examination findings, and reported activities. (*Id.*).  The ALJ ultimately found that the evidence "does not otherwise indicate that there is more than a minimal limitation on [Plaintiff's] ability to do basic work activities" and

noted the RFC reflects the degree of limitation she found in the "paragraph B" mental function analysis.  (*Id.*).

The Court concludes this passage sufficiently qualifies as a "discussion of the functional limitations imposed by [Plaintiff's] nonsevere impairments at step two of [the] analysis."  *See Emard*, 953 F.3d at 851.  The ALJ touched on Plaintiff's nonsevere anxiety; cited relevant record evidence; explained why the single opined mental functional limitation was not supported or consistent with the record; found no more than a mild limitation in the functional areas; discussed Plaintiff's daily and weekly activities; concluded the evidence does not indicate more than a minimal limitation in Plaintiff's ability to do basic work activities; and noted the RFC reflects the degree of limitation discussed.  (R. at 39–40; *see also* R. at 42–44 (referencing the same daily activities at step 4)).  This and other courts have found similar analyses sufficient.  *Cf., e.g.*, *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (finding an ALJ's express statement that the RFC reflected the degree of limitation the ALJ found in the mental function analysis sufficient); *Heather M.*, 2025 WL 313936, at *3–4 (finding the ALJ properly considered the plaintiff's nonsevere impairments in the RFC when, in step two, he found only mild limitations; discussed the plaintiff's conservative treatment, normal examinations, and daily activities; and noted that the RFC reflects the degree of functioning he found "in the 'paragraph B' mental functional analysis"); *John S.*, 2023 WL 6141664, at *4 (finding the ALJ properly considered the plaintiff's nonsevere impairments when he "thoroughly" discussed the related record and Plaintiff's symptoms in relation to functional limitations at step two); *Rachael G.*, 2024 WL 2847182, at *7 (finding no error where the ALJ expressly noted that the RFC reflected the same degree of limitation found in the "paragraph B" mental function analysis and where the ALJ highlighted portions of the evidence the supported a lack of functional mental limitations); *Forsch*

13

*v. Bisignano*, No. 5:24-CV-1365, 2025 WL 2307920 (N.D. Ohio Aug. 11, 2025) (finding no error where the ALJ discussed medical evidence and a plaintiff's reported activities in considering the "paragraph B" criteria; expressly found related medical opinions persuasive; and stated the RFC reflected the degree of limitation found in that analysis); *Yost v. Comm'r of Soc. Sec.*, No. 1:23-CV-00699-JRA, 2024 WL 1054234 (N.D. Ohio Jan. 26, 2024), *report and recommendation adopted*, No. 1:23-CV-00699, 2024 WL 1051654 (N.D. Ohio Mar. 11, 2024) (finding no error where the ALJ reviewed and "cited to medical records showing that [the nonsevere impairments] caused only mild symptoms and were well controlled with treatment" at step two); *Nelson v. Comm'r of Soc. Sec.*, No. 1:21-CV-01784-JG, 2023 WL 2435322 (N.D. Ohio Jan. 31, 2023) (finding no error when the ALJ found at step two that there "is no indication in the record that the symptoms experienced from [these] impairments caused more than a minimal limitation in [the plaintiff's] ability to engage in basic work-related activities for more than a 12-month period."), *report and recommendation adopted*, No. 1:21-CV-1784, 2023 WL 2431989 (N.D. Ohio Mar. 9, 2023); *see also Stephen T. C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-10821, 2024 WL 948592, at *6 (E.D. Mich. Mar. 5, 2024) ("Often, an ALJ's summary of the evidence related to a nonsevere impairment suffices to explain why the ALJ did not find any corresponding functional limitations without any discussion 'tying' that summary to the ALJ's finding.").  Though possibly more succinct than Plaintiff would like, the ALJ's step two discussion meets the second piece of the test set out in *Emard*.  The Court can sufficiently follow the ALJ's reasoning.

What's more, Plaintiff has not met his burden to show that he required any specific mental-related RFC limitation.  *See Angela K. P. v. Comm'r of Soc. Sec.*, No. 3:24-CV-272, 2025 WL 1564283, at *6 (S.D. Ohio June 3, 2025), *report and recommendation adopted sub nom. Angela P. v. Comm'r of Soc. Sec. Admin.*, No. 3:24-CV-272, 2025 WL 1827881 (S.D. Ohio July 2, 2025).

14

While Plaintiff may have received a diagnosis and some treatment related to his anxiety, "this diagnosis, standing alone, is insufficient to establish that the impairment is severe." *Brian M. v. Comm'r of Soc. Sec.*, No. 1:23-CV-130, 2024 WL 514462, at *5 (S.D. Ohio Feb. 9, 2024) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Nor does it "necessarily result in functional limitations." *Bobb v. Comm'r of Soc. Sec.*, No. 2:19-CV-5612, 2021 WL 716878, at *2 (S.D. Ohio Feb. 24, 2021); *Stevens v. Astrue*, 839 F. Supp. 2d 939, 949 (S.D. Ohio 2012) ("Plaintiff bore the responsibility of not merely producing a diagnosis of an impairment, but of demonstrating correlative functional limitation."). Here, Plaintiff does not point to any record evidence of functional limits related to his mental impairment that would prevent him from performing past relevant work. (*See generally* Docs. 9, 11). Ultimately, this was Plaintiff's burden. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations . . . ."); *cf. Laura Q. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-131, 2024 WL 1170037, at *7 (S.D. Ohio Mar. 19, 2024) (finding no error when where the plaintiff did "not identify any functional limitations caused by her knee impairments") (citing SSR 96-8p ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.")).

Finally, Plaintiff's arguments that the ALJ should have done more are not availing. Though Plaintiff is correct that a "mild" limitation finding of a "paragraph B" functional area is not the same as a "no" limitation finding, courts are clear that a mild limitation finding alone does not mandate the inclusion of any mental limitations in the RFC. *See, e.g.*, *Chastity M. v. Kijakazi*, No. 1:23-CV-00016-HBB, 2024 WL 102613, at *5 (W.D. Ky. Jan. 9, 2024) ("[D]istrict court holdings

15

within the Sixth Circuit are consistent with the ALJ's finding that a no greater than a mild limitation in each of the four areas of mental functioning does not require the inclusion of any mental limitations in the RFC.") (collecting cases); *Stephen T. C.*, 2024 WL 948592, at *6 ("While significant [psychiatric review technique] findings may correlate with work-related limitations, mild [psychiatric review technique] findings 'generally' do not correspond with a limited ability to perform 'work activities.'").

Plaintiff invokes SSR 85-15, which discusses an ALJ's duty to carefully consider mental impairments when assessing the RFC and states "[i]n the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex.  Mental impairments may or may not prevent the performance of a person's past jobs.  They may or may not prevent an individual from transferring work skills."  1985 WL 56857, at *4 (SSA 1985).  Yet Plaintiff's reliance on SSR 85-15 is seemingly misplaced, as it concerns "the medical-vocational rules as a framework for evaluating solely nonexertional impairments."  *Id.*  (citation modified).  Here, Plaintiff has both exertional and nonexertional limitations.  (*See* R. at 41 (limiting Plaintiff to light work)); *compare* 20 C.F.R. § 404.1567(b) (defining light works as, among other things, lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds) *with* 20 C.F.R. § 404.1569a(b) (defining an exertional limitation as one related to a plaintiff's ability to meet strength demands of jobs such as lifting); *see also Doneworth v. Shalala*, 76 F.3d 378 (6th Cir. 1996) ("SSR 85–15 does not apply to claimant since he has both exertional and nonexertional limitations and SSR 85–15 applies to cases where only a nonexertional limitation is present.").  Even more, Plaintiff does not adequately explain how SSR 85-15 otherwise undercuts the ALJ's analysis that the Court found sufficient.

16

Lastly, the out-of-district cases Plaintiff relies on are inapposite. One was decided prior to the Sixth Circuit's *Emard* decision. *See James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493 (N.D. Ohio Feb. 20, 2020). Another remanded where the ALJ—unlike here—did not indicate that he considered a plaintiff's mild limitations under the "paragraph B" criteria in forming the RFC determination. *William G. v. O'Malley*, No. 3:23-CV-00103-LLK, 2024 WL 1141019, at *4 (W.D. Ky. Mar. 15, 2024) (distinguishing the result from a case where the ALJ included such a sentence)); *see also Angela K. P.*, 2025 WL 1564283, at *5 (discussing the distinction further). And the courts in *William G.* and *Sell* found the ALJ failed to provide a sufficient explanation for why mild mental limitations did not impact the RFC. *William G.*, 2024 WL 1141019, at *3; *Sell v. Kijakazi*, No. 5:21-CV-00007, 2022 WL 4479932, at 2–3 (N.D. Ohio Sept. 27, 2022). Here, as explained above, the ALJ provided a sufficient explanation, met the requirements of *Emard*, and ultimately built an accurate and logical bridge between the evidence and her conclusion. That is exactly what the law requires.

In the end, Plaintiff spills much ink to convince the Court that any error the ALJ committed was not harmless. Be that as it may, there is no harm if there is no error. The Court finds that the ALJ's decision is supported by substantial evidence and remand is not required.

## IV.     CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date: March 27, 2026          *s/ Kimberly A. Jolson*

KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

17